UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

LATAVIOUS BEAL,

           Plaintiff,                             Case No. 1:22-cv-1040

v.                                            Honorable Paul L. Maloney

K. MINARD et al.,

           Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

**I.     Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which

he complains occurred at that facility. Plaintiff sues Qualified Mental Health Providers (QMHP) K. Minard and David Maranka.

Plaintiff alleges that on September 7, 2022, he was reading the Bible during the time when Defendant Minard made rounds in the segregation unit. (ECF No. 1, PageID.3.) Plaintiff's cell window was partially covered by paper, and his light was turned on. (*Id.*) Defendant Minard looked in Plaintiff's cell and walked away. (*Id.*)

The next day, Sergeant Hicks (not a party) came to Plaintiff's cell with a sexual misconduct ticket. (*Id.*) The ticket was written by Defendant Minard. (*Id.*) She alleged that she had observed Plaintiff standing in his cell masturbating while making direct eye contact with her. (ECF No. 1-1, PageID.7.) Defendant Minard claimed that Plaintiff made no "attempt to stop this behavior or cover up." (*Id.*)

Plaintiff appeared before an administrative law judge for his misconduct hearing on September 15, 2022. (*Id.*, PageID.8.) During the hearing, Plaintiff argued that he had been in his cell reading a book and that Defendant Minard had lied. (*Id.*) The administrative law judge found Plaintiff not guilty, concluding that, even if Plaintiff had been masturbating, there was insufficient evidence to conclude that he had intentionally exposed himself to Defendant Minard. (*Id.*)

On September 16, 2022, Defendant Minard was conducting mental health rounds. (ECF No. 1, PageID.3.) She stopped at Plaintiff's cell and stated, "Beal I'm trying my best to f*** you over you black n***** b****." (*Id.*) Defendant Minard then closed Plaintiff's cell door "with force." (*Id.*) Plaintiff sent a kite to Defendant Maranka about the incident that day. (*Id.*; ECF No. 1-3, PageID.16.)

On October 21, 2022, Defendant Minard issued Plaintiff another misconduct ticket for sexual misconduct. (ECF No. 1, PageID.3.) Plaintiff also states that at some time, Defendant

2

Minard told Plaintiff that since he was "found not guilty that [he would] get another misconduct." (*Id.*)

Based on the foregoing, Plaintiff indicates that he is asserting a First Amendment retaliation claim. (*Id.*) The Court also liberally construes Plaintiff's complaint to assert an Eighth Amendment claim premised upon the alleged verbal harassment by Defendant Minard, a Fourteenth Amendment due process claim premised upon the allegedly false misconducts issued by Defendant Minard, and claims against Defendant Maranka concerning his presumed alleged failure to favorably respond to Plaintiff's kite. Plaintiff seeks declaratory and injunctive relief, as well as damages. (*Id.*, PageID.4.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to

relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     Claims Against Defendant Maranka

Plaintiff's sole mention of Defendant Maranka is that on September 16, 2022, Plaintiff sent him a kite regarding Defendant Minard's behavior. (ECF No. 1, PageID.3.) Presumably, Plaintiff takes issue with Defendant Maranka's response, or lack of response, to his kite. While unclear, it appears to the Court that Plaintiff may have sent a kite to Defendant Maranka because he is Defendant Minard's supervisor.

Government officials, however, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may

not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989). Here, Plaintiff fails to allege facts suggesting that Defendant Maranka encouraged or conducted Defendant Minard's conduct, or authorized, approved, or knowingly acquiesced in that conduct. Plaintiff suggests only that he wrote a kite to Defendant Maranka. Presumably, Defendant Maranka failed to respond favorably. As noted above, that is insufficient to impose § 1983 liability. *See Shehee*, 199 F.3d at 300. Plaintiff's conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendant Maranka was personally involved in the events described in Plaintiff's complaint. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.

Moreover, to the extent Plaintiff suggests that Defendant Maranka violated his rights by not responding to his kite, the Court notes that Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson*, No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendant Maranka's conduct did not deprive Plaintiff of due process.

Moreover, Plaintiff's First Amendment right to petition the government was not violated by any failure of Defendant Maranka to respond to his complaint. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Finally, Defendant Maranka's actions (or inactions) have not barred Plaintiff from seeking a remedy for his complaints. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only

6

'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001). In light of the foregoing, the Court finds that Plaintiff has failed to state a cognizable claim against Defendant Maranka based upon any failure to act upon Plaintiff's kite.

### B.     Claims Against Defendant Minard

#### 1.     First Amendment Retaliation Claims

Plaintiff suggests that Defendant Minard retaliated against him, in violation of his First Amendment rights, by: (1) issuing the first misconduct ticket, for which Plaintiff was found not guilty; (2) verbally harassing Plaintiff on September 16, 2022; and (3) issuing a second misconduct ticket on October 21, 2022. (ECF No. 1, PageID.3.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A(b), "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A(b) screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Plaintiff alleges that he was reading the Bible on September 7, 2022, when Defendant Minard made rounds and looked into his cell. (ECF No. 1, PageID.3.) The next day, Plaintiff received the first sexual misconduct ticket issued by Defendant Minard. (*Id.*) Plaintiff was certainly engaged in protected conduct by practicing his religion on September 7, 2022. Plaintiff's complaint, however, is wholly devoid of allegations from which the Court could infer that Defendant Minard issued him an allegedly false misconduct ticket because Plaintiff had been practicing his religion and reading the Bible. Plaintiff, therefore, cannot maintain a First Amendment retaliation claim against Defendant Minard premised upon the issuance of the first misconduct ticket.

Plaintiff also avers that Defendant Minard verbally harassed him because he was found not guilty of the first misconduct. (*Id.*) The fact that Plaintiff chose to challenge the first misconduct charge during the hearing before the administrative law judge could constitute protected conduct. *See Murray*, 84 F. Appx' at 556. Plaintiff was found not guilty of the first misconduct on September 15, 2022 (ECF No. 1-1, PageID.8), and Plaintiff contends that Defendant Minard retaliated against him the next day—September 16, 2022—by verbally harassing him (ECF No. 1, PageID.3). In any event, the United States Court of Appeals for the Sixth Circuit has concluded that harassment is insufficient to constitute adverse action because recognition of such a standard would "trivialize the First Amendment." *See Thaddeus-X*, 175 F.3d at 397 (citing *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)). Plaintiff, therefore, cannot maintain a First Amendment retaliation claim against Defendant Minard premised upon her alleged verbal harassment.

Finally, Plaintiff states that he sent a kite to Defendant Maranka on September 16, 2022, to complain about Defendant Minard's behavior, and that almost a month later, on October 21, 2022, she issued another false sexual misconduct ticket. (ECF No. 1, PageID.3.) Plaintiff contends

that on September 16, 2022, Defendant Minard had stated, "Beal I'm trying my best to f*** you over you black n***** b****." (ECF No. 1, PageID.3.) Plaintiff also contends that at some unknown time, Defendant Minard told him that he would get another misconduct because he was found not guilty of the first. (*Id.*) Plaintiff has alleged that he engaged in protected activity by filing a kite complaining about Defendant Minard's actions. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Moreover, as noted above, Plaintiff's challenge to the first misconduct charge during the hearing before the administrative law judge could constitute protected conduct as well. *See Murray*, 84 F. App'x at 556.

Plaintiff, however, fails to allege sufficient facts from which the Court could plausibly conclude that Defendant Minard issued a second misconduct ticket to Plaintiff because of his protected conduct. As an initial matter, the complaint is devoid of facts from which the Court could infer that Defendant Minard was aware that Plaintiff had submitted a kite regarding her behavior to Defendant Maranka. Moreover, although Plaintiff contends that on September 16, 2022, Defendant Minard stated, "Beal I'm trying my best to f*** you over . . .," and then Plaintiff received a second misconduct on October 21, 2022, Plaintiff fails to allege any facts about the events surrounding the issuance of the second misconduct. Because Plaintiff fails to allege any facts about the events surrounding the issuance of the second misconduct, Plaintiff necessarily fails to allege any facts to suggest that Defendant Minard acted with a retaliatory motive. The fact that Defendant Minard made the above-discussed statement before the issuance of the second misconduct is not, on its own, sufficient to show that Defendant Minard acted with a retaliatory motive when the second misconduct was issued more than a month after she made the statement and Plaintiff fails to allege any facts about the events that led to the issuance of the second misconduct. Additionally, while Plaintiff alleges in a conclusory manner that Defendant Minard

told him that he would get another misconduct since he was found not guilty of the first, he provided no facts regarding when that statement was allegedly made. Because Plaintiff alleges no facts regarding when that statement was allegedly made, there is no suggestion of temporal proximity between the two events.

Furthermore, Defendant Minard's statement appears to target the administrative law judge's finding that Plaintiff was not guilty, not the fact that Plaintiff engaged in protected conduct when he chose to challenge the first misconduct and present a defense during his hearing. During the hearing, Plaintiff's defense was that he was reading a book when Defendant Minard looked in his cell. (ECF No. 1-1, PageID.8.) He asserted that Defendant Minard "lied on [him]" by issuing the misconduct. (*Id.*) As noted above, the administrative law judge found Plaintiff not guilty of the first misconduct because, even if Plaintiff had been masturbating, there was no evidence that he intentionally exposed himself to Defendant Minard. (ECF No. 1-1, PageID.8.) Plaintiff, therefore, was found not guilty not because of his presented defense, but because there was no evidence of any intentional exposure (if he was indeed exposed). Nothing in the complaint permits the Court to infer that Defendant Minard was aware of Plaintiff's challenge to and defense of himself during the first misconduct hearing and issued the second misconduct because of that protected conduct. Plaintiff, therefore, cannot maintain a First Amendment retaliation claim against Defendant Minard premised upon the issuance of the second misconduct.

In sum, Plaintiff merely alleges the ultimate fact of retaliation in this matter. His complaint is devoid of facts from which the Court could infer that any of Defendant Minard's actions were motivated by any of Plaintiff's protected conduct. Plaintiff, therefore, fails to set forth First Amendment retaliation claims against Defendant Minard, and such claims will be dismissed. *See*

*Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### 2. Eighth Amendment Harassment Claims

The Court has construed Plaintiff's complaint to assert an Eighth Amendment claim against Defendant Minard for verbal harassment. As noted above, Plaintiff claims that on September 16, 2022, Defendant Minard was making rounds, came to his cell, and stated, "Beal I'm trying my best to f*** you over you black n***** b****." (ECF No. 1, PageID.3.) Defendant Minard then closed Plaintiff's cell door "with force." (*Id.*)

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Therefore, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

12

For a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Here, while unprofessional, the alleged verbal harassment by Defendant Minard does not constitute punishment within the meaning of the Eighth Amendment. *Ivey*, 832 F.2d at 955. Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Id.* The Court, therefore, will dismiss any Eighth Amendment claims premised upon verbal harassment that Plaintiff asserts against Defendant Minard.

### 3. Fourteenth Amendment Due Process Claims

The Court has also construed Plaintiff's complaint to suggest that Defendant Minard violated his Fourteenth Amendment procedural due process rights by issuing him two false misconducts for sexual misconduct. A prisoner's ability to challenge a misconduct conviction depends on whether the conviction implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 487 (1995).

With respect to the first misconduct issued by Defendant Minard, Plaintiff's complaint and exhibits clearly indicate that Plaintiff was found not guilty following a hearing before an administrative law judge. Therefore, Plaintiff received due process of law with respect to that misconduct ticket. "Due process of law requires only that the person have the opportunity to convince an unbiased decision maker that he has been wrongly or falsely accused or that the evidence against him is false." *Onumonu v. Mich. Dep't of Corr.*, No. 1:21-cv-33, 2021 WL 972809, at *3 (W.D. Mich. Mar. 16, 2021).

Plaintiff also alleges that Defendant Minard issued him a second misconduct ticket for sexual misconduct on October 21, 2022. (ECF No. 1, PageID.3.) Plaintiff's complaint, however, is wholly devoid of any facts concerning whether he was convicted of this misconduct. In any event, Plaintiff does not allege that any misconduct conviction had any effect on the duration of his sentence—and he cannot. Plaintiff is serving sentences imposed in 2017 for crimes committed in 2016. *See* Offender Tracking Information System (OTIS), https://mdocweb.state.mi.us/OTIS2 /otis2profile.aspx?mdocNumber=327749 (last visited Nov. 14, 2022). For inmates serving sentences for offenses committed after 2000, even a major misconduct conviction results only in

the accumulation of "disciplinary time." *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

Plaintiff suggests that he was in segregation at the time the misconduct was issued. (ECF No. 1, PageID.3.) Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph*, 410 F. App'x at 868 (61 days in segregation is not atypical and significant). It has also held, in specific circumstances, that confinement in segregation for a much longer period of time does not implicate a liberty interest. *See, e.g., Jones*, 155 F.3d at 812–13 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only periods of segregation lasting for several years or more have been found to be atypical and

15

significant. *See, e.g., Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest).

While Plaintiff may have been housed in segregation during his disciplinary proceedings, his complaint is devoid of allegations suggesting that he was found guilty of the second misconduct and sanctioned to segregation. Plaintiff simply fails to allege any facts showing that he was subjected to conditions which would implicate a liberty interest because of the allegedly false second misconduct ticket. Any Fourteenth Amendment procedural due process claims against Defendant Minard will, therefore, be dismissed.[1]

---

[1] To the extent Plaintiff intended to raise substantive due process claims regarding the alleged false misconducts, he fails to state such a claim. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

"Where a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the Fourteenth Amendment Procedural Due Process Clause applies to protect Plaintiff's liberty interest in the misconduct proceedings. Moreover, Plaintiff's suggestion that Defendant Minard issued the false misconducts because she was "trying [her] best

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   November 16, 2022                    /s/ Paul L. Maloney
                                              Paul L. Maloney
                                              United States District Judge

---

to f*** [him] over" is insufficient to rise to a level of conduct that shocks the conscience. (ECF No. 1, PageID.3.) Consequently, any intended substantive due process claim will be dismissed.